603 P.2d 572

**STATE of Idaho, Plaintiff-Appellant,**

v.

**George Edward STROISCH, Defendant-Respondent.**

No. 12330.

Supreme Court of Idaho.

Nov. 27, 1979.

DONALDSON, Chief Justice.

On November 19, 1973, Ron and Rita Marcussen, husband and wife, disappeared. Defendant-respondent Stroisch was initially suspected of murdering the couple. Not until 1976 did sufficient evidence exist to warrant trying Stroisch for the death of the woman. On June 24, 1976, he was acquitted of her first degree murder. The State of Idaho, plaintiff-appellant, brings this appeal questioning the correctness of several evidentiary rulings entered by the trial court in Stroisch's favor. This appeal was taken pursuant to I.C. §§ 19–2804(5) and 19–2808, for future guidance of the courts.[1]

At trial, the state contended Stroisch made several highly incriminatory admissions to a Terry Ball concerning Stroisch's killing of the victim while both Stroisch and Ball were incarcerated at the McNeil Island, Washington federal penitentiary. Ball testified for the state to that effect. The defense, by way of impeachment, called Richard Towell (another McNeil Island inmate), whose testimony, contrary to that of Ball, was to the effect that Ball had been involved in penitentiary drug transactions. On cross-examination, the state asked Towell if he had ever been convicted of a felony; Towell responded in the affirmative. The judge refused to allow the state to further ask the names of the felonies for which Towell had been convicted, despite the state's offer of proof that the convictions were for blackmail, impersonating a federal officer (two counts), unlawful flight to avoid prosecution, and federal escape. Sustaining defense counsel's objection, the judge ruled the proof offered constituted improper impeachment.

The first issue presented is whether the court erred in limiting the state, in its impeachment of Towell, to inquiry only into the "fact" of a prior felony conviction. The state contends once the initial question is

David H. Leroy, Atty. Gen., Lynn E. Thomas, Howard Carsman, Deputy Atty. Gen., Boise, for plaintiff-appellant.

John P. Luster, Coeur d'Alene, for defendant-respondent.

1. I.C. §§ 19–2804(5) and 19–2808 have been repealed and replaced by I.C. §19–2801 and I.A.R. 4, 11(c) which further limit state appeals in criminal cases. We need not decide whether this appeal could now be brought pursuant to present law, as the appeal was taken prior to the repeal of I.C. §§ 19–2804(5) and 19–2808.

answered in the affirmative, it should then be permitted to inquire into the number of convictions, the generic name of each, and the sentence(s) imposed therefor. The rules of evidence in civil actions are applicable also to criminal actions, except as otherwise provided by statute. I.C. § 19–2110. Therefore, the recent promulgation of I.R. C.P. 43(b)(6) is dispositive of this issue. That rule provides:

"Rule 43(b)(6). Impeachment by adverse party.—A witness may be impeached by the party against whom he was called, by contradictory evidence, or by evidence that his general reputation for truth, honesty or integrity is bad, but not by evidence of particular wrongful acts, except that upon a finding by the court in a hearing outside of the presence of the jury that a prior conviction of a felony of a witness is relevant to his credibility, it then may be shown by the examination of the witness, or the record of judgment, that he has been convicted of a felony and the nature of the felony."

■ Since the sole purpose of this appeal is guidance in future proceedings, the correctness of the trial court's ruling prior to the promulgation of I.R.C.P. 43(b)(6) is now of no consequence and thus will not be decided.

■ The second issue presented is whether the court erred in refusing to admit exhibit 82, a letter written by Stroisch's wife to her parents two days after the alleged murder. The letter read, in relevant part:

". . . I'm planning on leaving Ed [Stroisch]. Since my call Ed and I had a big fight and he flatly told me that I could leave anytime but I had to leave Stanley here with him, which is something that I just won't do, so I'm leaving here without Ed knowing anything about it and I'm taking Stanley with me when I go. . . . But I don't want Ed to know where I'm at because he'll come after Stanley and I would either be killed or kill Ed because no one is taking this baby away from me."

Mrs. Stroisch had testified on behalf of Stroisch as to his whereabouts the day of the alleged murder and as to his composure thereafter. On cross-examination, the state sought to introduce the above letter (exhibit 82) for the purpose of impeachment on the ground that the fear of her husband shown therein constituted a reason for her to testify favorably for him. The letter was not listed on the search warrant as an item to be seized. The items which were listed were numerous small items of personalty belonging to Mr. and Mrs. Marcussen. While conducting the search pursuant to the warrant, the officer noticed the letter lying on the top of a dresser in a bedroom. On cross-examination, the officer was somewhat uncertain whether the letter was in an envelope and whether anything was on top of the letter as it lay on the dresser. After he noticed the letter, the officer picked it up, read it, and took it with him when he left defendant's residence. He did not list the letter on his inventory of items seized, nor did he return it to the issuing magistrate. The defense objected on the grounds that the state's use of the letter exceeded the scope of direct examination; that the letter had been seized in an overbroad search; and that the letter was improperly omitted in the agent's inventory return to the magistrate who had issued the search warrant. The judge refused exhibit 82 in an ambiguous ruling which the state maintains was based on the fact the letter was not listed on the search warrant as an item to be seized and on the failure by the seizing agent to return the letter to the court and to make a proper inventory of it. Stroisch, on the other hand, asserts exhibit 82 was rejected because it was seized as the result of an overbroad search. It appears to us the trial court's ruling was based upon his determination that the letter was seized in an overbroad search *and* upon the fact the officer failed to inventory and return the item seized. In view of the questionable circumstances surrounding the seizure of exhibit 82, and the minimal impeachment value it could have had in any event, we find no error in the trial court's refusal thereof.

■ The state also sought introduction of exhibit 66, which consisted of X-rays

taken of Mr. Marcussen's leg prior to his disappearance. The state contends it needed the X-rays to prove a bone fragment found near the remains of Mrs. Marcussen was from Mr. Marcussen's leg, in support of its theory that Stroisch shot Mr. Marcussen and strangled Mrs. Marcussen. The state also claims the evidence was necessary to rebut a defense theory that Mr. Marcussen was alive and that he, not Stroisch, had killed Mrs. Marcussen. The state had been unable to locate the X-rays until very shortly before trial; when they were discovered, it notified the court and offered to allow any defense expert an opportunity to examine them. The defense claimed surprise and the court initially refused admission of exhibit 66 on the basis of surprise and immateriality. On rebuttal, however, the court did admit exhibit 66 in evidence. In view of the ultimate admission in evidence of exhibit 66, we see no prejudice to the state in the trial court's earlier refusal thereof. Since the order of proof at trial is committed to the sound discretion of the trial court, and since any possible error was cured by the subsequent admission of the exhibit into evidence, we find no error.

Affirmed.

BAKES, McFADDEN and BISTLINE, JJ., and SCOGGIN, J., Pro Tem., concur.